

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2007

# Nara v. Frank

Precedential or Non-Precedential: Precedential

Docket No. 05-4779

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Nara v. Frank" (2007). *2007 Decisions*. Paper 1040.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1040

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4779
_____

JOSEPH NARA

v.

FREDERICK FRANK,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 99-cv-00005)
District Judge:  The Honorable Terrence F. McVerry
_____

ARGUED OCTOBER 26, 2006

BEFORE: SMITH, WEIS, and NYGAARD, <u>Circuit</u> <u>Judges</u>.


(Filed May 8, 2007)
_____

Christopher D. Carusone, Esq. (Argued)
Office of the Attorney General of Pennsylvania
Appeals and Legal Services
Strawberry Square
Harrisburg, PA 17120
        Counsel for Appellant


Lisa B. Freeland, Esq.  (Argued)
Office of the Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
        Counsel for Appellee

_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

In *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001), we held that the equitable tolling doctrine might allow the District Court to consider Joseph Nara's otherwise untimely habeas corpus petition. Upon remand, the District Court found equitable tolling applicable, and granted Nara's petition based upon his claim that he was mentally incompetent when he pleaded guilty to murdering his wife and mother-in-law. The Commonwealth appealed. We will affirm.

I. Factual and Procedural History

A. Conviction and Incarceration

Joe Nara's wife, DeLorean Churby, left him. Over the next few weeks, Nara grew despondent and visited the Fayette Community Mental Health Center on an outpatient "crisis" basis. Nara attempted suicide by taking an overdose of sleeping tablets and remained unconscious for two days in the hospital. He was then involuntarily committed to the Connellsville State General Hospital and treated with anti-depressants and an anti-psychotic tranquilizer.

After four days at Connellsville, Nara was released. Soon thereafter, Nara discovered love letters between Churby and Pennsylvania State Trooper Leonard Maharowski. Nara argued with his wife over the telephone, and she taunted him with details of her affair. Enraged, Nara drove to confront her at her mother's trailer.

When he arrived and knocked on the trailer's door, Churby's mother aimed a shotgun in his face and told him to leave. Infuriated, Nara went to his car and got his pistol. He returned to the house, shot the door's lock and burst in. Again, Churby's mother aimed the shotgun at him, and his wife repeatedly struck him with a telephone. Amid the struggle, Nara shot and killed both women.

Nara fled to North Carolina. Within a day, however, he made several calls to the Pennsylvania State Police and to his father, and admitted he killed the Churbys. He turned himself in

3

and was returned to Pennsylvania to face two charges of first-degree murder. He was then confined at the Fayette County prison.

Nara's family retained attorney Charles Gentile as counsel. His family grew fearful that he would harm himself in prison, and John Walton of the Fayette County Mental Health Center advised Gentile that Nara was in need of immediate evaluation and help. Gentile filed a petition under the Pennsylvania Mental Health Act, 50 PA. STAT. ANN. § 4407-4411, requesting that the Fayette County Court of Common Pleas transfer Nara to Mayview State Hospital for psychiatric evaluation and commitment because he was a risk of harm to himself or others. Gentile did not seek an evaluation to establish Nara's competency to stand trial or to assess his sanity at the time of the killings. Fayette County Common Pleas Judge Richard Cicchetti granted Gentile's motion and transferred Nara to Mayview.

At Mayview, Duncan Campbell, M.D., decided that Nara should be observed, but did not place him on any routine medication. Later that day, staff psychologist James T. Nelson and an associate, David Bert, evaluated Nara more closely. They recommended suicide precautions and treatment for depression.

Just four days later, staff psychologist Lilian Meyers, Ph.D., reported that Nara was neither mentally ill nor in need of treatment. She did not comment on Nara's competency to stand trial or his sanity at the time of the killings. However, she noted the "seriousness" of the accusations against him and allegations that he planned to escape, and recommended Nara be transferred

4

back to the county prison. He was transferred back to the prison, where he remained untreated for the next four months.

On June 20, 1984, Nara appeared before Fayette County Court of Common Pleas Judge William J. Franks and pleaded guilty to two counts of murder in the first degree. During an exhaustive 85-minute colloquy, Nara admitted he "really did intentionally kill" his wife, denied having been treated for any mental or emotional illnesses, and repeatedly affirmed his understanding of the proceedings. On July 13, 1984, Judge Franks sentenced Nara to two concurrent life sentences. Nara did not file a direct appeal to the Pennsylvania Superior Court.

The court transferred Nara to the State Correctional Institution at Pittsburgh (SCIP). SCIP officials immediately placed Nara at the facility's medical unit "for psychiatric reasons," placed a leg restraint on him to reduce the risk of suicide, and treated him with anti-depressants and anti-psychotic medications. An attending physician noted Nara had "intense suicidal ideation of severe proportions," and Nara told him he attempted to hang himself at the county prison following his arrest. Within three weeks, SCIP officials initiated involuntary commitment proceedings. On September 10, 1984 – eighty-two days after the plea colloquy – Nara was committed to Farview State Hospital as a suicide risk. Nara spent 90 days at Farview, and then returned to SCIP's medical facility.

On February 19, 1985, Nara again attempted suicide and was recommitted to Farview. He remained there for about a year and a half, and was then returned to prison.

5

B. State Post-Conviction Proceedings

1. First Post-Conviction Relief Proceeding

On April 25, 1988, Nara filed a *pro se* petition and brief for post-conviction relief under the Pennsylvania Post Conviction Hearing Act (PCHA).[1] In his brief, Nara claimed (1) the court violated his constitutional rights by accepting his pleas while he was mentally incompetent; and (2) his trial counsel, Gentile, was ineffective for failing to have his competency evaluated. Judge Franks appointed Fayette County Public Defender Richard E. Bower to represent Nara and held evidentiary hearings at which Nara, his father, his two brothers, and Attorney Gentile testified. After the hearings, Judge Franks, treating the petition as alleging only ineffective assistance of counsel, concluded that Gentile was not ineffective, and denied the petition.[2] Bower filed an appeal on Nara's behalf to the Superior Court raising only his ineffective assistance of counsel claim. The Superior Court denied Nara's appeal for failing to conform to the newly-enacted PCRA, 42 PA. STAT. ANN.

_____

[1] The Pennsylvania legislature replaced the PCHA with the Post Conviction Relief Act (PCRA) 12 days before Nara filed his petition. Nara's appointed counsel, Mr. Bower, did not amend Nara's petition to comply with the PCRA.

[2] We previously noted Franks' apparent error in *Nara v. Frank*, 264 F.3d 310, 312 (3d Cir. 2001), *overruled in part*, *Carey v. Saffold*, 536 U.S. 214 (2002).

§9543.[3] Bower ended his representation of Nara, and Nara filed a *pro se* petition for allowance of appeal in which he re-asserted his incompetency claim and his ineffective assistance of counsel claim. The Pennsylvania Supreme Court denied his *pro se* petition for *allocatur*.

## 2. Second Post-Conviction Relief Proceeding

On May 15, 1990, Nara filed a *pro se* PCRA petition in which he alleged his guilty plea was "unlawfully induced," and that his first PCRA counsel was ineffective because he failed to amend his petition to comply with the PCRA, failed to seek *allocatur*, and failed to preserve state and federal constitutional claims for federal habeas review. Judge Franks appointed Mark Morrison, Esq.,[4] to represent Nara and allowed Nara to amend his petition to specifically claim that he was mentally incompetent when he pleaded guilty. Judge Franks held hearings on Nara's incompetency claim and heard testimony from him and Dr. Jobindar Harika,[5] a forensic psychiatrist who met with

---

[3.] The Superior Court held that Nara failed to argue that Gentile's alleged errors undermined the reliability of his conviction or how those errors harmed him. Appendix at 433.

[4.] Morrison represented Nara before the PCRA court, the Superior Court, the Pennsylvania Supreme Court, and the United States Supreme Court.

[5.] At the time, Dr. Harika had worked in psychiatry for eight years. He spent four years at the Behavioral Clinic of
(continued...)

7

Nara and thoroughly reviewed his medical records. Harika opined that Nara was probably "psychotic" and incapable of entering a plea. The Commonwealth did not present rebuttal testimony. Judge Franks, in a memorandum opinion, concluded Nara was incompetent when he pleaded guilty, based on "the totality of the circumstances," and Harika's "quite convincing" and "unrebutted testimony."[6] Judge Franks issued an order allowing Nara to withdraw his guilty pleas, and the Commonwealth appealed.

On April 30, 1992, the Superior Court reversed, vacated Judge Franks' order, and reinstated Nara's guilty pleas. The Superior Court held that Nara (1) waived his incompetency claim by failing to raise it in his first post-conviction petition

---

[5.](...continued)
Allegheny County, two years on staff at the Woodward State Hospital, and spent four years as a director at the Forensic State Hospital from 1986-1990. Harika was also a consultant to the Cambria County Jail, the Westmoreland Correction Center, the Somerset County Jail, and the Fayette County Prison. He previously testified in Pittsburgh and Washington county proceedings.

[6.]Under Pennsylvania law, once a plea has been entered and sentence imposed, a guilty plea may be withdrawn on a showing of manifest injustice, which may be established if the plea was not knowingly and voluntarily given. *Com. v. Leidig*, 850 A.2d 743, 746 (Pa. Super. 2004); *Com. v. Starr*, 301 A.2d 592, 595 (Pa. 1973).

pursuant to PCRA §9544(b);[7] (2) failed to show his claim was not previously litigated and not waived pursuant to PCRA §9543(a)(3); and (3) waived his right to withdraw his guilty pleas by failing to challenge their validity within ten days, according to PA. R. CRIM. P. 321 (now PA. R. CRIM. P. 720). Nara appealed. The Pennsylvania Supreme Court denied *allocatur* and the United States Supreme Court denied *certiorari*.[8]

### 3. Third Post-Conviction Relief Proceeding

On December 21, 1995, Nara filed a third *pro se* petition, alleging, *inter alia*, that he was incompetent when he entered his guilty plea. Judge Franks appointed Phyllis Jin, Esq., to represent Nara. Franks permitted Nara to withdraw his third PCRA petition in favor of a motion to withdraw his guilty pleas *nunc pro tunc*. Judge Franks, following the Superior Court's previous ruling, found Nara waived his incompetency claim because he failed to challenge his guilty plea within ten days of making it, and denied the motion. Nara appealed, claiming he should have been allowed to withdraw his guilty pleas *nunc pro tunc* because Judge Franks had previously found him

---

[7.] As noted *supra*, Nara raised his incompetency claim in his first *pro se* petition, but Judge Franks failed to address it.

[8.] Nara raised his incompetency claim in his petition for allowance of appeal, Appendix at 830, and in his petition for *certiorari*, *Id*. at 586.

9

incompetent.[9] Appendix at 664. The Superior Court affirmed, and the Pennsylvania Supreme Court denied *allocatur*.

## C. Federal Habeas Corpus Proceedings

On December 12, 1998, Nara filed a *pro se* petition for a writ of habeas corpus in the U.S. District Court for the Western District of Pennsylvania. The District Court referred the case to Magistrate Judge Francis X. Caiazza, who issued a report and recommendation (R&R) recommending that the District Court dismiss Nara's petition because Nara failed to file his petition within the Anti-Terrorism and Effective Death Penalty Act's one-year statute of limitations. *See* 28 U.S.C.A. §2244(d) (2006). Over Nara's objections, the District Court adopted the R&R and denied his petition as untimely.

Nara appealed, and we remanded the cause to the District Court for a hearing on whether Nara's "ongoing periods of mental incompetence" and allegations that Ms. Jin abandoned him following his appeal to the Pennsylvania Supreme Court, justified equitably tolling the statute of limitations. *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001), *overruled in part*, *Carey v. Saffold*, 536 U.S. 214 (2002).

Magistrate Judge Caiazza held evidentiary hearings on the matter and found Ms. Jin "affirmatively misled" Nara and thereby prevented him from timely filing his petition for habeas corpus. *Nara v. Frank*, No. 99-5, 2004 WL 825858 (W.D.Pa.

---

[9]Nara made the same claim to the Pennsylvania Supreme Court. Appendix at 706.

10

March 10, 2004). Magistrate Judge Caiazza filed an R&R recommending that the limitations period be equitably tolled, and the Commonwealth did not file objections. On April 8, 2004, the District Court adopted the R&R and Nara filed an amended petition for a writ of habeas corpus. The Commonwealth answered, and both parties submitted supplemental briefs to the District Court.

On September 1, 2005, Magistrate Judge Caiazza filed an extensive R&R in which he concluded (1) Nara exhausted his incompetency claim by "fairly presenting" it to each level of the Pennsylvania judiciary; (2) his incompetency claim was not procedurally defaulted; (3) the second PCRA court's conclusion that Nara was incompetent to plead guilty was entitled to a presumption of correctness under 28 U.S.C. §2254(e)(1); and (4) Nara's federal due process rights were violated when he entered his guilty pleas because he was mentally incompetent.

The Magistrate Judge recommended that the District Court grant the petition, allow Nara to withdraw his guilty pleas, and direct the Commonwealth to release him unless it commenced trial within 120 days. In accordance with the Federal Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B)-(C), the R&R provided the parties ten days in which to file objections. The R&R ended with the routine warning that, "Failure to file timely objections may constitute a waiver of any appellate rights." *See, e.g.,* FED. R. CIV. P. 72(b) advisory committee's note.

Neither party filed objections to the R&R. On September 27, 2005, the District Court noted that no objections were filed,

11

adopted the R&R, and issued the recommended order. Over two weeks later – on October 14 – the Commonwealth filed a motion with the District Court requesting *vacatur* pursuant to FED. R. CIV. P. 60(b). The Commonwealth asserted it never received the R&R and requested ten additional days in which to file objections. In response, Nara suggested the District Court grant the Commonwealth ten days to file objections to the R&R, but only if its objections persuaded the court to either reject or amend the R&R. On October 26, before the District Court could rule on the parties' respective motions, the Commonwealth filed a notice of appeal.[10] The District Court dismissed the Commonwealth's October 14 motion as moot.

## II. Jurisdiction

The District Court exercised jurisdiction over Nara's petition for habeas corpus pursuant to 28 U.S.C. §§2241 and 2254. We have jurisdiction pursuant to 28 U.S.C. §§1291 and 2253(a).

## III. Standard of Review

### A.

Where the District Court relies entirely upon the state court record, we review its decision granting habeas corpus *de*

---

[10.] In its reply brief, the Commonwealth asserts it filed its notice of appeal "in an abundance of caution" due to the fact that nearly 30 days had expired since the District Court issued its judgment and order.

12

*novo*. *Satterfield v. Johnson*, 434 F.3d 185, 190 (3d Cir. 2006); *Hartey v. Vaughn*, 186 F.3d 367, 371 (3d Cir. 1999), *cert. denied*, 528 U.S. 1128 (2000). Here, however, Nara argues we should review the District Court's decision for plain error because the Commonwealth failed to object to the Magistrate Judge's R&R within ten days.

Federal Rule of Civil Procedure Rule 60(b)(1) permits a District Court to grant a party relief from a final judgment based upon, *inter alia*, "excusable neglect." FED. R. CIV. P. 60(b) (2007). The test for "excusable neglect" is equitable, and requires us to weigh the "totality of the circumstances." *Welch & Forbes, Inc. v. Cendant Corp.*, 234 F.3d 166, 171 (3d Cir. 2000) (citing *Pioneer Inv. Servs. v. Brunswick Assocs. LP*, 507 U.S. 380 (1993)). In particular, we consider 1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay – and whether it was within the movant's control; and 4) whether the movant acted in good faith. *Id.*

There is no evidence the Commonwealth acted in bad faith. Nevertheless, the Commonwealth's overall negligence in handling the matter precludes us from finding "excusable neglect." First, attorneys practicing in the Western District of Pennsylvania were under a standing order to register with the Case Management/Electronic Case Files (CM/ECF) system by July 1, 2005.[11] If the Commonwealth's attorneys had complied

---

[11.] In early 2001, the federal courts began implementing the Case Management/Electronic Case Files (CM/ECF). Under

(continued...)

13

with that order, they would have received immediate electronic notification that the Magistrate Judge had issued the R&R and could have accessed it by hyper-link.[12] Second, the Commonwealth failed to respond to the *District Court's* order for 17 days. Despite the urgency of the situation, the Commonwealth has offered no excuse for this latter delay. We cannot conclude the Commonwealth's failure to object to the R&R for over six weeks was excusable.

## B.

It is well-settled that a right, constitutional or otherwise, "may be forfeited in criminal as well as civil cases by the failure to make a timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414,

---

[11.](...continued)
the program, federal courts and parties file and issue all documents electronically (with certain exceptions for *pro se* prisoners, etc.). Attorneys of record receive email notices, containing hyperlinks to documents, immediately upon every filing. The Western District announced its adoption of the program in the fall of 2004 and, on April 20, 2005, issued a standing order making the program mandatory, effective July 1, 2005. *See* Amended Standing Order, Misc. No. 05-6 (W.D.Pa. 2006).

[12.]The Commonwealth's Attorneys based in Harrisburg were required to register in the Middle District of Pennsylvania in 2003. *See* Standing Order No. 07-01 (M.D.Pa. 2007).

444 (1944)). We have supervisory authority to impose a rule of waiver when a party fails to timely object to a magistrate judge's R&R. *Thomas v. Arn*, 474 U.S. 140 (1985). We have held generally that failing to timely object to an R&R in a civil proceeding may result in forfeiture of *de novo* review at the district court level, but does not forfeit the statutory right to appellate review under other standards. *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987), *cert. denied*, 484 U.S. 837 (1987). We now hold that, where a party fails to file timely objections to a magistrate judge's R&R in a habeas proceeding, and the district court then adopts the R&R, we will only review the R&R for plain error.

Article III requires *de novo* review of a magistrate judge's R&R where a party timely objects. *United States v. Peretz*, 501 U.S. 923 (1991). The Federal Magistrate Judges Act neither precludes nor mandates a particular standard of appellate review where the parties fail to object to the R&R. 28 U.S.C.A. §636(C) (2006). The Federal Rules governing habeas cases do not dictate a particular result where a party fails to timely object, but authorize us to apply the Federal Rules of Civil Procedure where appropriate. FED. R. GOV. §2254 CASES 11 (2007). The relevant civil procedure rule, however, is inapplicable to habeas corpus cases. FED. R. CIV. P. 72(b) advisory committee's note (2007). We therefore turn to our jurisprudence to determine the appropriate standard of review.

In *Henderson*, we considered whether the Government waived its right to appeal by failing to make a timely objection to a magistrate judge's recommendation that the district court grant habeas relief to a federal prisoner. We recognized our

15

authority to adopt a waiver rule under *Thomas v. Arn*, 474 U.S. 140 (1985), and noted that a majority of the courts of appeals had adopted one. We nonetheless rejected an outright waiver rule because we were concerned that it would (1) entangle the court in a web of equitable exceptions, and (2) deprive a party of any review of unobjected-to dispositive legal issues raised in the R&R. *Henderson*, 812 F.2d at 878.[13]

Soon after *Henderson*, we held that a party who does not appeal a magistrate judge's non-dispositive order (under 28 U.S.C. §636(b)(1)(A)) to the district court waives its right to seek review of the order in the Court of Appeals. *United Steelworkers of Am. v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001 (3d Cir. 1987); *Continental Cas. Co. v. Dominick D'Andrea Inc.*, 150 F.3d 254 (3d Cir. 1998). The *New Jersey Zinc* and *D'Andrea* panels recognized *Henderson*, but saw a distinction between subsection (A) referrals, which give the magistrate judge's orders the force of law; and subsection (B) referrals, which do not carry the force of law until the district court adopts the R&R. *New Jersey Zinc*, 828 F.2d at 1005-006; *D'Andrea*, 150 F.3d at 250. Both panels concluded a waiver rule in subsection (A) cases supported the Magistrate Judges Act's purpose – "to relieve courts of unnecessary work and to improve access to the courts." *New Jersey Zinc* at 1007; *D'Andrea* at 251 (internal citations omitted).

---

[13.]Before *Henderson*, we declined to adopt a waiver rule where the magistrate judge's report treated filing of objections as permissive. *Welch v. Heckler*, 808 F.2d 264, 266 (3d Cir. 1986). The R&R in this case, however, plainly treated the timely filing of objections as mandatory.

Six other courts of appeals apply a waiver rule against untimely objections to a dispositive order or R&R. *Henley Drilling Co. v McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *United States v. George*, 971 F.2d 1113, 1118 n.7 (4th Cir. 1992); *Kelly v. Withrow*, 25 F.3d 363, 366 (6th Cir. 1994); *cert. denied*, 513 U.S. 1061 (1994); *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986);[14] *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Other courts of appeals have adopted more lenient qualified forfeiture rules, like the one we adopted in *Henderson*. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); *Griffini v. Mitchell*, 31 F.3d 690 (8th Cir. 1994); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Henley v. Johnson*, 885 F.2d 790 (11th Cir. 1989).[15]

The Fifth Circuit Court of Appeals' analysis in *Douglass* persuades us that we should review unobjected-to R&Rs, as adopted by a district court, for plain error. First, the *Douglass* court explained its conversion to the plain error standard it now

---

[14.] The Seventh Circuit does not apply its appellate waiver rule where untimely objections are not "egregiously late" and the opposing party has not been prejudiced. *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994), *cert. denied*, 513 U.S. 839 (1994).

[15.] The D.C. Circuit Court of Appeals has apparently never adopted a specific rule. *Powell v. United States Bureau of Prisons*, 927 F.2d 1239 (D.C. Cir. 1991).

employs. *Douglass*, 79 F.3d at 1421. Initially, the court applied a rule of waiver against unobjected-to R&Rs. Soon thereafter, it adopted a forfeiture rule which permitted plain error review for unobjected-to factual findings and *de novo* review of unobjected-to legal conclusions. *See Douglass*, 79 F.3d at 1422. Fourteen years later, the *Douglass* court recognized its then-existing rule was an "anomaly, which caused a great waste of judicial resources" and "was totally at odds with the forfeiture/plain error rule applicable in other settings."*Id.* at 1419. Second, the court noted that the Supreme Court, when it approved waiver rules in *Arn*, also approved an "in the interests of justice" exception which is closely analogous to the plain error exception to the contemporaneous objection rule. *Id.* at 1428 (citing *Arn*, 474 U.S. at 155). In conclusion, the *Douglass* court held failure to timely file objections to an R&R "shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object." *Douglass*, 79 F.3d at 1429.

We conclude plain error review is appropriate where a party fails to timely object to a magistrate judge's R&R in habeas corpus cases. First, plain error review recognizes the difference between failing to timely assert a right, and voluntarily waiving a right. Failing to timely assert a right results in forfeiture, which permits plain error review. *United States v. Olano*, 507 U.S. 725, 733 (1993). Waiver, on the other hand, extinguishes any error. *Id*. Second, failure to timely object to an R&R is little different from, for example, the failure of counsel to timely object to the admission of evidence in open

18

court. *Douglass*, 79 F.3d at 1428. In the latter situation, we regularly review for plain error in criminal and civil proceedings, including habeas cases. *See, e.g., United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006); *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 338 (3d Cir. 2006); *Clemmons v. Wolfe*, 377 F.3d 322, 325 (3d Cir. 2004). Third, plain error review promotes the effectiveness and efficiency of the lower courts by compelling parties to promptly contest dispositive issues before the magistrate judge and district judge. Requiring *de novo* review despite a party's failure to timely object, on the other hand, blunts the effectiveness of the Federal Magistrate Judges Act. *Douglass*, 79 F.3d at 1420. It either forces the court of appeals to consider claims that were never reviewed by the district court, or compels the district court to review every issue in every case, even if both parties are satisfied with the R&R. *Arn*, 474 U.S. at 147; *New Jersey Zinc*, 828 F.2d at 1007; *Douglass*, 79 F.3d at 1420. At the same time, plain error review accords with our decisions in *Henderson*, *New Jersey Zinc*, and *D'Andrea* by affording some level of appellate review to all dispositive legal issues raised by an R&R. Finally, plain error review recognizes failure to timely object to an R&R is not a jurisdictional defect. *Grandison v. Moore*, 786 F.2d 146, 148 (3d Cir. 1986). District courts may therefore consider requests by parties for extra time or requests to excuse late filings on adequate justification. *Id*.

By employing plain error review, we remain faithful to *Henderson* by using a straight-forward, frequently-applied standard of review which preserves appellate consideration of dispositive legal issues. In addition, we add precision to

*Henderson* and give substance to the oft-repeated warning that "failure to timely object may risk the loss of appellate rights."

The Commonwealth argues that we should nonetheless review the R&R *de novo*, because the District Court reviewed the R&R *de novo*. *See Henderson*, 812 F.2d at 879 n.4. We disagree. There is no indication the District Court conducted an independent review of the entire record and applicable law *de novo*. *Id.* Nor was the District Court under any obligation to do so. *Medina v. DeGuglielmo*, 461 F.3d 417, 426 (3d Cir. 2006) (citing FED. R. GOV. §2254 CASES 8(b) (2006)).

Finally, as explained *supra*, the Commonwealth's failure to object was not caused by forces outside its control. The Commonwealth attorneys were on notice that (1) the Western District required all practicing attorneys to register to use the CM/ECF system; and (2) failure to object to an R&R risked the loss of appellate rights. If the Commonwealth's attorneys had complied with the Western District's standing order, they would have had immediate notice of the R&R's filing and access to it.

IV. Discussion

A. Exhaustion

Under the plain error standard, we should only reverse the District Court's[16] decision if it made a plain error which

[16.] We now refer to the Magistrate Judge's conclusions as those of the District Court because it adopted the R&R in its (continued...)

20

affects "substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993). An error is "plain" if it is clear or obvious. *Olano*, 507 U.S. 725, 734 (1993). If we discern an error, we will only correct it if the appellant also demonstrates the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)); *Clemmons v. Wolfe*, 377 F.3d at 325.

First, the Commonwealth argues the District Court erred by concluding Nara exhausted his state court remedies with respect to his incompetency claim. The federal habeas statute requires state prisoners to exhaust available state court remedies before seeking federal relief. 28 U.S.C.A. §2254(b) (2006); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Therefore, a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845; *see also Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006).

A claim is exhausted if it was "fairly presented" to the state courts. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. at 848; *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir. 2002); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996). A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state courts. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995)

---

[16.](...continued)
entirety.

(*per curiam*). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).[17] Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989); *Pursell v. Horn*, 187 F.Supp.2d 260, 288 (W.D.Pa. 2002) (Smith, J.).

Nara's incompetency claim arises under the Due Process clause of the Fourteenth Amendment. Due process prohibits a

---

[17.] The Commonwealth suggests the Supreme Court's decision in *Baldwin v. Reese* may have limited the viability of the *McCandless* analysis. We disagree. *Baldwin* held that, "ordinarily a state prisoner does not fairly present a claim to a state court if that court must look beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion, that does so." *Baldwin*, 541 U.S. 27, 32 (2004). *Baldwin* concluded that the petitioner's briefs to the state courts in that case did not "fairly present" a federal claim because the briefs cited no case that might alert the state court to the federal nature of the claim, lacked a factual description supporting the claim, and yet cited federal law in support of other claims. *Id*. at 33. These are among the same considerations set out in *McCandless*.

court from accepting a guilty plea unless it is entered "competently," "knowingly and voluntarily." *Godinez v. Moran*, 509 U.S. 389, 397-402 (1992). A criminal defendant is competent to plead guilty if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (citing *Dusky v. United States*, 362 U.S. 402 (1940)); *United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987) (citing *United States ex rel McGough v. Hewitt*, 528 F.2d 339, 342 n.2 (3d Cir. 1975)). Pennsylvania courts have consistently applied the same standard. *See, e.g.*, *Com. v. Frey*, 904 A.2d 866, 872 (Pa. 2006); *Com. v. Marshall*, 312 A.2d 6, 7 (Pa. 1973); *Com. v. Harris*, 243 A.2d 408, 409 (Pa. 1968); *Com. v. Smith*, 469 A.2d 1104, 1107 (Pa. Super. 1983).

Following his second PCRA petition,[18] Nara gave the Pennsylvania courts a full opportunity to address his federal incompetency claim by repeatedly stating his claim "in terms so particular as to call to mind a specific right protected by the Constitution." *McCandless v. Vaughn*, 172 F.3d at 260. Nara's second petition included a claim that his guilty plea was "unlawfully induced." Appendix at 436. Attorney Morrison orally amended Nara's *pro se* petition to specifically include the argument that Nara was "not competent to make a knowledgeable and willing plea at the time he entered it."

---

[18.]We turn to Nara's second petition for exhaustion purposes because he failed to "fairly present" his incompetency claim to the Superior Court following the first post-conviction proceeding. He did, however, present the claim throughout the proceedings following his second and third petitions.

23

Appendix at 448. After Judge Franks granted Nara's petition and the Commonwealth appealed, Nara argued that he established his mental incompetency to plead guilty, articulated the test applied by both federal and state courts, and compared the facts of his case to *Com. v. Marshall*, 312 A.2d 6 (1973). Appendix at 885-87. When he again sought *allocatur*, Nara specifically raised "the invalidity of his plea," and, citing *Marshall*, stated that he "was mentally ill and incompetent to knowingly answer the plea court's questions." Appendix at 830. Nara consistently presented the basic factual outline of a federal claim. The Pennsylvania courts were not required to search beyond the pleadings and briefs for a federal issue. *Compare Baldwin v. Reese*, 541 U.S. 27 (2004), *and Bronshtein v. Horn*, 404 F.3d 700, 725-26 (3d Cir. 2005). We conclude Nara properly exhausted his incompetency claim.

## B. Procedural Default

The procedural default doctrine prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A state rule provides an adequate and independent basis for precluding federal review if (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions. *Bronshtein v. Horn,* 404 F.3d 700, 708 (3d Cir. 2005), *cert. denied*, *Beard v. Bronshtein*, 126 S.Ct. 1320 (2006); *Doctor v. Walters*, 96 F.3d 675, 683-84 (3d

24

Cir. 1996). The Commonwealth bears the burden of demonstrating that Nara defaulted on his incompetency claim. *Netherland*, 518 U.S. at 166 (internal citations omitted). We agree with the District Court that the Commonwealth failed to carry its burden.

## 1. Former PA. R. CRIM. P. 321

Nara's first purported procedural default occurred when he failed to file a motion to challenge his guilty plea within ten days of entering it, pursuant to former PA. R. CRIM. P. 321. The Superior Court first noted this alleged waiver following his second PCRA proceeding. Appendix at 583. His third petition for relief was denied based upon PA. R. CRIM. P. 321. Pennsylvania courts, however, have consistently held rules of waiver inapplicable to incompetency claims. *Com. v. Brown*, 872 A.2d 1139, 1153 (Pa. 2005); *Com. v. Santiago*, 855 A.2d 682, 692 n.9 (Pa. 2004); *Com. v. Tyson*, 402 A.2d 995, 997 (Pa. 1979). Indeed, it would be contradictory to conclude that, regardless of his incompetency at the time of his guilty plea, Nara could competently waive his right to challenge his guilty plea just ten days later. *See Santiago*, 855 A.2d at 692, *and Com. v. Marshall*, 318 A.2d 724 (Pa. 1974) (citing *Pate v. Robinson*, 383 U.S. 375, 384 (1966)).

## 2. 42 PA. STAT. ANN. §9544(b)

Following his second petition, the Superior Court held that Nara waived his incompetency claim by failing to raise it in his first post-conviction petition pursuant to 42 PA. STAT. ANN. §9544(b). As we have noted, Nara did raise his incompetency

25

claim in his first petition. Regardless, even after the enactment of the PCRA, Pennsylvania courts did not consistently bar successive post-conviction petitions – like Nara's – which allege prior counsel was ineffective. *See, e.g., Com. v. Allen*, 732 A.2d 582, 587 (Pa. 1999); *Com. v. Christy*, 656 A.2d 877, 881 (Pa. 1995); *Com. v. Cummings*, 619 A.2d 316, 318 (Pa. Super. 1993); *Com. v. Dukeman*, 605 A.2d 418, 421 (Pa. Super. 1992); *see also Lambert v. Blackwell*, 134 F.3d 506, 522 n.27 (3d Cir. 1998) (noting Commonwealth acknowledged Pennsylvania courts will consider waived claims when raised under the rubric of ineffective assistance of counsel).

### 3. 42 PA. STAT. ANN. §9543(a)(3)

Finally, following his second petition, the Superior Court held that Nara was ineligible for post-conviction relief under 42 PA. STAT. ANN. §9543(a)(3). Section 9543(a)(3) bars post-conviction relief unless a petitioner can show his claim was not previously litigated and was not waived. When Nara brought his second PCRA petition, his incompetency claim was not "previously litigated" because the Superior Court did not reach the merits. *Com. v. Morales*, 701 A.2d 516, 520 (Pa. 1997). His alleged waivers were subject to the exceptions described above. In any case, a petitioner can overcome failure to meet §9543(a)(3)'s requirements where he shows his prior counsel was ineffective, *Morales*, 701 A.2d at 520 (Pa. 1997) (citing *Com. v. Griffin*, 644 A.2d 1170 (Pa. 1994)), or makes "a strong *prima facie* showing that a miscarriage of justice may have occurred." *Hull v. Kyler*, 190 F.3d 88, 101 n.4 (3d Cir. 1999) (quoting *Com. v. Lawson*, 549 A.2d 107, 112 (Pa. 1988)).

26

Nara's incompetency claim was not procedurally defaulted, because Pennsylvania courts have frequently applied exceptions to his alleged waivers under former PA. R. CRIM. P. 321 and the PCRA. The Pennsylvania appellate courts' refusal to review his incompetency claim on the merits was not consistent with Pennsylvania law. We therefore proceed to the merits of his claim.

## C. Nara's Competency

### 1. Presumption of Correctness

The District Court accorded a presumption of correctness to the second PCRA court's determination that Nara was incompetent under 28 U.S.C. §2254(e)(1). Section 2254(e)(1) provides, in relevant part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. §2254(e)(1) (2006); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990) (*per curiam*) (cited in *Michael v. Horn*, 459 F.3d 411, 414 n.3 (3d Cir. 2006)); *White v. Horn*, 112 F.3d 105, 112 n.7 (3d Cir. 1997). A state trial court's determination of an individual's competency is entitled to a presumption of

27

correctness. *Smith v. Freeman*, 892 F.2d 331, 341 (3d Cir. 1989) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (*per curiam*), and *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)); *see also Miller v. Fenton*, 474 U.S. 104 (1985).

The Commonwealth argues the District Court should not have applied the presumption of correctness to the second PCRA court's findings because there was no "adjudication on the merits" of Nara's incompetency claim. We disagree. First, the §2254(e)(1) presumption of correctness applies regardless of whether there has been an "adjudication on the merits" for purposes of §2254(d). *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). Second, during the second PCRA proceeding, Judge Franks plainly *did* reach the merits of Nara's incompetency claim: he reviewed the lengthy plea colloquy transcript, held two days of evidentiary hearings on the claim, observed expert witness testimony and cross-examination, identified and applied the correct legal principle, and specifically concluded Nara was incompetent when he pleaded guilty. *Compare Albrecht v. Horn*, 471 F.3d 435, 446 (3d Cir. 2006) (stating that identification and purported application of the correct legal principle constitutes an "adjudication on the merits" for purposes of AEDPA).

Finally, there is a "familiar and compelling" justification for according presumptive weight to Judge Franks' determination. *Miller v. Fenton*, 474 U.S. 104, 114 (1985). It is a well-established principle of federal law that state trial judges deserve substantial deference.

> Face to face with the living witnesses, the original trier of the facts holds a position of advantage

28

from which appellate judges are excluded. In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth...how can we say he is wrong? We never saw the witnesses.

*Boyd v. Boyd*, 169 N.E. 632, 634 (N.Y. 1930) (quoted in *Oregon Medical Society*, 343 U.S. 326, 339 (1952), *Maggio*, 462 U.S. at 117, *and Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This principle is particularly relevant here, because witness credibility and demeanor are crucial to resolving an individual's competency. *Fenton*, 474 U.S. at 116 -17 (citing *Maggio*, 462 U.S. at 117). A retrospective competency examination at this stage – over twenty years later – would pose considerable difficulties for a federal habeas court. *Drope v. Missouri*, 420 U.S. 162 (1975). Judge Franks, a learned colleague of a coordinate court, was in a unique position from which he could carefully assess witness credibility and demeanor in open court against his extensive experience with the case. Even six years after the plea colloquy, he was in a position "far superior to that of federal judges reviewing an application for a writ of habeas corpus." *Fenton*, 474 U.S. at 114.

The Commonwealth contends the District Court should not have relied upon the second PCRA court's factual findings because the Pennsylvania Superior Court vacated the court's decision. When an appellate court vacates a lower court's order, it renders the lower court's order null and void. *United States v. Ayres*, 76 U.S. 608, 609 (1869); *Allegheny County v. Maryland Cas. Co.*, 132 F.2d 894, 896 (3d Cir. 1943); *Kuppel v. Auman*, 529 A.2d 29, 31 (Pa. Super. 1987) (citing *McGine v.*

29

*State Mut. Ben. Soc.*, 4 A.2d 537, 538 (Pa. Super. 1939)). However, a state court's factual determination may be given effect even if its order has been rendered a nullity on other grounds. *Dickerson v. Vaughn*, 90 F.3d 87, 90-91 (3d Cir. 1996) (Weis, J.) (Superior Court's factual determination entitled to deference where reversal order by the Pennsylvania Supreme Court left factual determination undisturbed); *see also Lambert v. Blackwell*, 387 F.3d 210, 236-40 (3d Cir. 2004) (deferring to state courts' factual findings despite concluding that state courts lacked jurisdiction under Pennsylvania law); *Pursell v. Horn*, 187 F.Supp.2d 260, 292, 308-12 (W.D.Pa. 2002) (according deference to PCRA court's factual findings where state appellate court found PCRA court lacked jurisdiction); *Com. v. Pate*, 617 A.2d 754, 760 (Pa. Super. 1992). The Commonwealth acknowledges a state PCRA trial court's factual findings merit deference unless a state appellate court invalidates those findings. Here, Judge Franks' determination that Nara was incompetent was left undisturbed by the Pennsylvania Superior Court, the Pennsylvania Supreme Court, and by Judge Franks himself during the third post-conviction proceeding. We find no plain error in the District Court's conclusion that a presumption of correctness applied to Judge Franks' competency determination.

### 2. Rebuttal of the Presumption

Application of the presumption of correctness raises the question of whether the federal habeas statute allows the Commonwealth to rebut the presumption. The statute provides habeas applicants an opportunity to challenge a state court's factual determination by "clear and convincing evidence." 28

30

U.S.C.A. §2254(e)(1) (2006). It is silent as to whether a state can rebut the presumption. Generally, where a statute authorizes a designated party to take specific action, it is inappropriate to presume that a party not so designated may also take it. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2003). At the same time, we recognize that denying the Commonwealth any opportunity to contest Judge Franks' determination would seem to conflict with the overall design of the federal habeas statute. We decline to decide this question, because the record here confirms that the Commonwealth's attempt to rebut would fail.

As stated *supra*, the standard for competency to plead guilty is whether the criminal defendant was able to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational understanding of the nature and object of the proceedings against him. *Godinez*, 509 U.S. at 396; *United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987); *United States ex rel. McGough v. Hewitt*, 528 F.2d 339, 342 n.2 (3d Cir. 1975). Ordinarily, a defendant's competency to plead guilty may be established during the plea colloquy, and a competency determination is necessary only when the court has reason to doubt the defendant's competency. *Godinez*, 509 U.S. at 402 n.13.

Under Pennsylvania law, a guilty plea may nonetheless be withdrawn, after a sentence has been imposed, on a showing of manifest injustice. *Com. v. Leidig*, 850 A.2d 743, 746 (Pa. Super. 2004); *Com. v. Muhammad*, 794 A.2d 378 (Pa. Super. 2002). A prisoner may show his plea resulted in manifest injustice if he establishes he entered it involuntarily,

31

unknowingly or unintelligently. *Leidig*, 850 A.2d. at 746; *Muhammad*, 794 A.2d at 383. To ascertain whether a plea was given voluntarily, knowingly and intelligently, the court must examine the plea colloquy and the totality of the circumstances surrounding the entry of the plea. *Com. v. Gribble*, 863 A.2d 455, 474 n.16 (Pa. 2004) (stating, "when a collateral attack is leveled against a record waiver, it is the totality of the circumstances, and not the record waiver or plea colloquy, which controls."); *Muhammad*, 794 A.2d at 383-84 (citing *Com. v. Lewis*, 708 A.2d 497, 501 (Pa. Super. 1998)).

During his plea colloquy, Nara repeatedly indicated he understood what was transpiring. *See, e.g.,* Appendix at 112, 120, 124. The "totality of the circumstances," reflected in Nara's medical records and Dr. Harika's testimony, however, suggests otherwise. Nara's medical records indicate he was hospitalized and medicated[19] at state mental health institutions following suicide attempts both before his arrest and shortly after his sentencing, but was apparently left untreated during the intervening months. Indeed, his condition during the four months prior to the plea colloquy, and during the weeks prior to sentencing, is entirely undocumented.

Dr. Harika's expert testimony provided essential insight into Nara's mental state during this undocumented period. Dr. Harika analyzed Nara's medical records and his statements at the plea colloquy, and testified that Nara's condition steadily

---

[19.]Nara was treated with several anti-depressants and tranquilizers used to treat schizophrenia before the murders and throughout the two years after his sentencing.

32

worsened such that he was "psychotic" and "out of touch with reality" when he pleaded guilty. The Commonwealth failed to rebut his testimony, and has not presented any additional evidence to contradict Harika's testimony in subsequent proceedings. Finally, we again emphasize the fact that Judge Franks, who conducted an 85- minute colloquy with Nara and held hearings during three separate post-conviction proceedings, ultimately found Nara was incompetent when he pleaded guilty and never reversed this finding. We find no plain error in the District Court's conclusion that Nara was incompetent when he pleaded guilty.[20]

## V. Conclusion

In sum, because the Commonwealth failed to timely object to the Magistrate Judge's R&R, we have reviewed the R&R, as adopted by the District Court, for plain error.

We find no plain error in the District Court's conclusion that Nara "fairly presented" his incompetency claim to each level of the Pennsylvania judiciary. Nor did it err by according a presumption of correctness to Judge Franks' competency determination. Finally, we find no plain error in the District

---

[20.]Even if we were to find an obvious error on the part of the District Court, the Commonwealth has failed to show that any such error has "seriously affected the fairness, integrity or public reputation of judicial proceedings." The Commonwealth had a full opportunity to challenge Dr. Harika's testimony during the second PCRA proceeding, and it has been afforded a full and fair opportunity to pursue its arguments.

Court's conclusion that Nara's guilty pleas were accepted in violation of due process.

We will affirm the District Court's order.