Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued December 8, 2003　　　　Decided April 2, 2004

No. 02-1334

DUNKIN' DONUTS MID-ATLANTIC DISTRIBUTION CENTER, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD AND COMMERCIAL WORKERS UNION,
LOCAL NO. 1360,
INTERVENOR

————

Consolidated with
Nos. 02–1335 and 02–1369

————

On Petitions for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Mark Peters* argued the cause for petitioner Dunkin′ Donuts Mid–Atlantic Distribution Center, Inc.  With him on the briefs was *Alison J. Little*.

*Ronald I. Tisch* argued the cause for petitioner Aldworth Company, Inc.  With him on the briefs were *Peter A. Susser* and *Jason Branciforte*.

*William M. Bernstein*, Senior Attorney, National Labor Relations Board, argued the cause for respondent.  With him on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Margaret A. Gaines*, Supervisory Attorney.

Before: GINSBURG, *Chief Judge*, RANDOLPH and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: These petitions for review, and the National Labor Relations Board's cross-petition for enforcement, primarily raise fact-bound issues relating to the Board's finding of joint employer status and its issuance of a bargaining order.

Dunkin′ Donuts Mid–Atlantic Distribution Center, Inc. shipped products from its warehouse in Swedesboro, New Jersey, to retail Dunkin′ Donuts stores.  Aldworth Company, Inc. leased 63 drivers and 40 to 45 warehouse employees to Dunkin′.  In early 1998, the United Food and Commercial Workers Union Local 1360 began an organizational campaign among the Aldworth employees.  Aldworth, after becoming aware of the union's activity, undertook extensive efforts to defeat it. Among other actions, Aldworth solicited employee grievances and promised to adjust them;  promised employees more benefits and other favors;  threatened employees, telling them they would start with nothing if the union came in;  solicited employees to report whether the union was bothering or harassing them;  threatened employees with the loss of their jobs and their 401(k) plan if they supported the union;  ordered employees to remove their union pins;  warned employees about less favorable working conditions if they union-

ized; coercively interrogated an employee about his union activity and promised to refrain from discharging him if he stopped supporting the union; and told another employee that his suspension was a consequence of his supporting the union. In addition, Aldworth discharged and suspended many employees and retaliated against others because of their union activities.

In the meantime, the union managed to procure authorization cards from 58 of the 109 employees in the unit. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 601–10 (1969). The cards, as signed by each of these employees, stated that "I hereby authorize [the union] to represent me for purposes of collective bargaining...." When the union requested recognition, Aldworth refused. The union then filed a representation petition. The election, held in September 1998, resulted in 48 votes against the union and 45 in favor. Aldworth's anti-union activities continued after the election.

The Board, agreeing with the Administrative Law Judge, ruled that Aldworth and Dunkin′ Donuts were joint employers; that the companies had committed numerous violations of § 8(a)(1) and (a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (a)(3), some of which are described above; and that Aldworth had violated § 8(a)(1) and (a)(5) by refusing to recognize and bargain with the union while engaging in conduct that illegally undermined the union's support and prevented a fair rerun election. Among other remedies, the Board ordered Aldworth and Dunkin′ Donuts to offer reinstatement to employees illegally discharged; to make whole employees who suffered losses; to purge the files of employees who suffered illegal discharges or discipline; and to post remedial notices. The Board also ordered Aldworth to bargain with the union on request.

The case comes to us in an odd posture. Aldworth no longer has any presence at the Swedesboro warehouse. Its contract with Dunkin′ Donuts ended on December 31, 2000, after the ALJ's decision but before the Board's. (The ALJ issued his decision on April 20, 2000; the Board issued its decision and order on September 30, 2002.) The administra-

tive docket contains an entry indicating that Aldworth's attorney wrote to the Board on November 30, 2000, advising it of the forthcoming cancellation of its contract. At oral argument, counsel for Aldworth stated that the letter went to the Board's Executive Director, who informed Aldworth by letter a few days later that he would not forward it to the Board. The letters are not in the record. Neither Aldworth nor Dunkin′ Donuts filed a motion to reopen the record and, so far as appears, neither company took any other action to alert the Board to Aldworth's departure. The Board thus decided this case without knowing that Aldworth no longer had a contract with Dunkin′ Donuts. Neither company has raised the issue whether the Executive Director erred in not forwarding Aldworth's letter to the Board. We therefore will review the Board's decision only on the basis of the evidence the Board had before it. One further development needs to be mentioned. Between May 2000 and February 2002 the union filed numerous additional charges against Aldworth and Dunkin′ Donuts. After the Board's General Counsel issued a complaint, the companies entered into settlement agreements. In its agreement, Dunkin′ Donuts admitted that it was a successor to Aldworth and promised to recognize and bargain with the union if we enforce the Board's order in this case. *See NLRB v. Burns Sec. Servs.*, 406 U.S. 272, 277–81 (1972); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 184–87 (1973).

With respect to many of the unfair labor practices, the companies argue that the Board's findings are not supported by substantial evidence. No useful purpose would be served by reciting the details of each charge and the Board's response. Our review of the record shows that all of the contested unfair labor practices discussed in the Board's (and the ALJ's) opinion had sufficient evidentiary support. The only serious questions are whether Aldworth and Dunkin′ Donuts were joint employers and whether the Board properly ordered Aldworth to bargain.

On the subject of joint employers, Dunkin′ Donuts claims that under *Goodyear Tire & Rubber Co.*, 312 N.L.R.B. 674, 688–89 (1993), the union waived its right to make such a claim

when it named only Aldworth in its representation petition, in its election stipulation and in its initial unfair labor practice charges. The Board ruled that in light of the union's omissions, *Goodyear* relieved Dunkin′ of any bargaining obligation but it did not relieve the company of responsibility for the unfair labor practices as a joint employer. (Dunkin′ was later named as a respondent to those charges.) The Board's view of *Goodyear* must be sustained. *Goodyear* held only that when a union, knowing the relationship between two companies, deliberately names only one of the companies in its representation petition and its stipulation for an election, and requests bargaining only with that company, it may not later substitute another company. *Goodyear Tire & Rubber Co.*, 312 N.L.R.B. at 688–89.

Two separate entities may be joint employers of "a single same workforce if they 'share or co-determine those matters governing essential terms and conditions of employment.'" *Aldworth Co.*, 338 N.L.R.B. No. 22, at 3 (Sept. 30, 2002), quoting *NLRB v. Browning-Ferris Indus.*, 691 F.2d 1117, 1124 (3d Cir. 1982). This is "essentially a factual issue." *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964). The evidence here fully supports the Board's finding that Dunkin′ Donuts "was, to varying degrees, involved in decisions relating to employment tenure, discipline, assignment of work and equipment, recognition and awards, and day-to-day direction of the leased employees." 338 N.L.R.B. No. 22, at 4. Dunkin′ Donuts' transportation manager received and sometimes administered driver applicant road tests, interviewed driver applicants, prevented the hiring of applicants he did not approve, selected and assigned employees to permanent routes, selected the vehicles they would use, directed them to make special deliveries, made other work assignments, and handled complaints about the drivers, consulting with Aldworth about their discipline or speaking directly to the drivers. Dunkin′ Donuts' warehouse supervisor tested warehouse applicants, reported his opinion about their qualifications, which Aldworth generally followed, and personally fired one employee. Dunkin′ Donuts also determined Aldworth employee wage and benefit rates by specify-

ing, in the parties' "cost-plus" lease agreement, the rates it would reimburse Aldworth. Aldworth discontinued an employee bonus program after Dunkin′ Donuts said it would no longer endorse the program. And Dunkin′ Donuts' transportation manager developed, in significant part, the rating categories used to determine whether drivers received incentive awards. In addition, as the Board found, Dunkin′ Donuts played a key role in some of the events that the Board ultimately found to be unfair labor practices. 338 N.L.R.B. No. 22, at 4.

More could be written, but the foregoing recital is enough to show why substantial evidence on the record as a whole backs up the Board's finding that Dunkin′ Donuts was a joint employer. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951).

At oral argument, counsel for Dunkin′ Donuts claimed that the Board improperly relied on some of these indicia of common control. The Board held that "actions taken pursuant to government statutes and regulations are not indicative of joint employer status, and that the ALJ therefore erred in considering Dunkin′ Donuts' "role in interpreting government rules relating to interstate commerce [and] its inclusion of employees with its 401(k) plan . . . as indice[s] of joint employer status." 338 N.L.R.B. No. 22, at 3. Although counsel asserted in oral argument that in some instances the actions Dunkin′ Donuts took with respect to the employees merely fulfilled its obligations under federal health and safety regulations, we do not know which particular regulations – or how many of the Board's "indices" of common control – counsel had in mind. We do not know this because Dunkin′ Donuts made no such argument in its opening brief or, for that matter, in its reply brief. Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure provides that the argument portion of an appellant's opening brief "must contain" the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." We have enforced this rule before and we do so here again. *See, e.g., Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983); *Rollins Envtl. Servs. (NJ) Inc. v. EPA*,

937 F.2d 639, 652 n.2 (D.C. Cir. 1991); *Barrick Gold Strike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000).

The remaining question deals with the validity of the Board's order that Aldworth (or its successor) bargain with the union upon request. "[B]ecause circumstances . . . may change during the interval between the occurrence of the employer's unfair labor practices and the Board's disposition of a case, there is an obvious danger that a bargaining order that is intended to vindicate the rights of past employees will infringe upon the rights of the current ones to decide whether they wish to be represented by a union." *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1170-71 (D.C. Cir. 1998) (citation omitted). The law of this circuit is that the Board must determine whether a bargaining order is warranted in light of the circumstances existing at the time it would enter the order, even if the union had, at one time, achieved majority status through authorization cards. *Id.* To this end, we have required the Board to take into account employee turnover. *See Douglas Foods Corp. v. NLRB*, 251 F.3d 1056, 1066 (D.C. Cir. 2001); *Avecor, Inc. v. NLRB*, 931 F.2d 924, 937 (D.C. Cir. 1991).

Here, the Board found the anti-union conduct "so pervasive as to have created a corporate culture of lawlessness." 338 N.L.R.B. No. 22, at 16. "[W]hile some employees may have voluntarily departed their jobs, those who remain will doubtless share this history with newcomers." *Id.* It is true that before the September 1998 election there had been a high percentage of turnover among the drivers and warehouse employees at the Swedesboro facility. But the record also showed that, in the words of the ALJ, there was "a core of steady employees with whom the experience of [the companies'] unlawful conduct will remain." *Id.* at 96. Neither Aldworth nor Dunkin′ Donuts challenges this finding or the Board's conclusion that the core employees will likely share their pre- and post-election experience with new employees. The Board thus provided a sufficient explanation for its determination that "an affirmative bargaining order is necessary to remedy the . . . unfair labor practices." *Id.* at 16.

One last word is in order. In addition to employee turnover and the passage of time, we have required the Board to consider the effects of any changes in management. *See Flamingo Hilton-Laughlin*, 148 F.3d at 1171-73; *Somerset Welding & Steel, Inc. v. NLRB*, 987 F.2d 777, 781 (D.C. Cir. 1993). But as mentioned earlier, neither Aldworth nor Dunkin' Donuts ever properly moved to reopen the record in order to place before the Board the fact that Aldworth's management contract ended on December 31, 2000 – twenty one months before the Board's order. We thus express no opinion about whether the bargaining order would have been sustainable if that fact had been before the Board.

The petitions for judicial review are denied and the Board's cross-petition for enforcement is granted.

*So ordered.*