

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2007

# Leyva v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 05-2371

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Leyva v. Williams" (2007). *2007 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2371

———

ARMANDO LEYVA,

Appellant

v.

ANTONIO WILLIAMS, PROBATION OFFICER; THE
DISTRICT ATTORNEY OF THE COUNTY OF
PHILADELPHIA; THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA,

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-03697)
District Judge: Honorable Anita B. Brody

———

Argued March 12, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER,[*] Circuit
Judges.

(Filed: October 3, 2007)

———

[*] The Honorable Eugene E. Siler, Jr., Senior Circuit Judge
for the United States Court of Appeals for the Sixth Circuit, sitting
by designation.

David L. McColgin (Argued)
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

     Counsel for Appellant.

Joshua S. Goldwert (Argued)
Ronald Eisenberg
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

     Counsel for Appellees.

------

OPINION OF THE COURT

------

FUENTES, Circuit Judge.

Armando Leyva was convicted in Philadelphia's Court of Common Pleas of statutory sexual assault and corruption of a minor. Leyva, who was thirty-five years old at the time, had engaged in a six-month sexual relationship with a teenage girl who attended his church. He was sentenced to eleven-and-a-half to twenty-three months in prison, followed by three years of probation.

Represented by new appellate counsel, Leyva sought direct and collateral state court review of his conviction, asserting various claims of ineffective assistance of trial counsel. Among these claims, Leyva contended that trial counsel had a conflict of interest arising from his former representation of the complainant's mother's ex-boyfriend. He also claimed that trial counsel had

-2-

received an offer from the complainant's mother to drop the charges against Leyva in exchange for $5,000. According to Leyva, trial counsel was ineffective for failing to withdraw his representation in order to testify about these facts. Pennsylvania's courts denied review of some of Leyva's claims because he failed to submit affidavits that trial counsel or the complainant's mother were "available and willing" to testify; they declined to review other claims after Leyva was released from custody.

Leyva raised his ineffectiveness claims in a federal petition for habeas corpus. The District Court dismissed the petition after concluding that Leyva's failure to comply with Pennsylvania's procedural requirements constituted a procedural bar to federal review. Because we disagree, we will vacate and remand for further proceedings.

## I. Factual and Procedural Background

On July 21, 1999, Armando Leyva was tried before a judge in Philadelphia's Court of Common Pleas on charges of involuntary deviate sexual intercourse, statutory sexual assault, corruption of a minor, and indecent assault.[1] The prosecution's principal witness at trial was an adolescent girl, L.B., who attended the church where Leyva was an organist. According to her testimony, during the first six months of 1998, when she was fourteen years old, the two carried on a consensual sexual relationship. According to Leyva, the two had never engaged in any sexual conduct.

A central issue at trial was L.B.'s credibility. During cross-examination, Leyva's attorney attempted to introduce evidence of a "previous perjury." App. 235. Specifically, he questioned L.B. about a prior accusation of sexual assault she had made against Wilfredo Lopez (her mother's former boyfriend), but later recanted. Lopez, it came to light, had been represented by Leyva's attorney at the time of the accusation, so the attorney was familiar with the surrounding facts. He questioned L.B. about whether she was pressured by her mother into making the

---

[1] Leyva waived his right to trial by jury.

accusation against Lopez. L.B. maintained the accusation had been truthful, explaining that she later recanted it because she was afraid of Lopez, and because Leyva's attorney asked her to say "nothing happened." App. 257, 253.

At the conclusion of trial, the judge found Leyva guilty of statutory sexual assault and corruption of a minor, in violation of 18 Pa. Stat. §§ 3122.1 and 6301, respectively. Because of the evidence about L.B.'s recanted accusation, the judge gave Leyva "the benefit of the doubt as far as involuntary deviate sexual intercourse is concerned," finding him not guilty of that more serious offense. App. 305.[2] On September 16, 1999, he sentenced Leyva to eleven-and-a-half to twenty-three months in prison, followed by three years' probation.

On appeal, Leyva retained a new attorney who submitted to the trial court a statement of matters complained of on appeal, as required under Pennsylvania Rule of Appellate Procedure 1925(b). Notably, he included an affidavit from Leyva's wife stating that trial counsel told her and Leyva that L.B.'s mother offered to drop the charges against Leyva in exchange for $5,000.[3] In response, the trial judge issued an opinion concluding that Leyva's claims of ineffectiveness warranted a new trial. This opinion was without effect, however, because the case was already on appeal before the Superior Court.[4]

---

[2] He also found Leyva not guilty of indecent assault.

[3] Leyva also submitted an affidavit from Jose Rojas, who stated he had previously been wrongly accused by L.B. of sexual assault.

[4] Under Pennsylvania Rule of Appellate Procedure 1925 (amended July 25, 2007), a trial court must issue an opinion providing the reasons for an order, or any rulings or other matters complained of on appeal. According to the Pennsylvania Superior Court, "[w]hen a trial court prepares a Rule 1925 opinion, it no longer has the jurisdiction to grant or deny a defendant's motion for a new trial. Rather, the court can only explain its trial and post-trial actions in the Rule 1925 opinion." Commonwealth v. Clinton, 683 A.2d 1236, 1239 (Pa. Super. Ct. 1996) (citation

On appeal, Leyva argued that trial counsel was ineffective for: failing to interview several potential witnesses; failing to withdraw based on a conflict of interest because of his prior representation of Lopez; failing to present L.B.'s mother as a witness; and failing to withdraw from representing Leyva in order to testify at trial.

On October 17, 2002, the Superior Court affirmed Leyva's conviction. The court disposed of Leyva's first two claims on the merits, concluding that neither trial counsel's failure to interview the witnesses identified by Leyva, nor the alleged conflict of interest constituted error or prejudiced Leyva. Regarding Leyva's second two claims, the court declined to reach them on the merits, concluding that Leyva had failed to present affidavits indicating that L.B.'s mother or Leyva's trial counsel would have testified.[5]

Leyva petitioned for reconsideration, and shortly thereafter petitioned the Pennsylvania Supreme Court for allowance of appeal. Both petitions were denied. On August 5, 2004—four days before the expiration of his probation—Leyva filed a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), raising additional claims of ineffective assistance of counsel. A few months later, however, the Court of Common Pleas summarily dismissed the PCRA petition because Leyva was no longer in custody.

On the same day that Leyva filed his PCRA petition, he also filed a petition for habeas corpus in federal court. His petition raised five grounds for relief:

---

omitted); see also Hull v. Kyler, 190 F.3d 88, 100-01 (3d Cir. 1999) (discussing Rule 1925).

[5] As discussed below, this decision was based on the court's reading of Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa. Super. Ct. 2002), which ruled that "[i]neffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense." App. 363.

-5-

(1) Trial counsel was ineffective because he (a) failed to withdraw in order to testify about the efforts of L.B.'s mother to obtain $5,000 from Leyva in exchange for dropping all the charges against him, and (b) failed to call L.B.'s mother as an adverse witness.

(2) Trial counsel was ineffective for (a) failing to withdraw his representation in order to testify after L.B. stated at trial that she was pressured by trial counsel to drop the charges against Lopez, and (b) having a conflict of interest because he previously represented Lopez.

(3) Trial counsel was ineffective and had a conflict of interest because he failed to present evidence that L.B.'s mother was motivated to lie (and to pressure her daughter to lie) because she was cooperating with the government in an unrelated case.

(4) Trial counsel was ineffective for failing to request evidence of L.B.'s mother's cooperation agreement with the government in an unrelated case. Moreover, the government's failure to turn over this evidence rendered his conviction unconstitutional.

(5) Trial counsel was ineffective for failing to introduce evidence about L.B.'s previous accusation against Jose Rojas.

App. 613-14.

The District Court referred Leyva's petition to a Magistrate Judge, who recommended denying relief for three reasons. Leyva v. Williams, No. Civ.A. 04-3697, 2005 WL 746042, at *2 (E.D. Pa. Mar. 30, 2005). First, the Magistrate Judge concluded that claim 1(a) was procedurally defaulted because Leyva failed to comply with Pennsylvania's "affidavit rule" when presenting his claim in state court. Id. at *3. Second, she concluded that claims 1(b), 2(a), 3, and 4 were procedurally defaulted because Leyva failed to comply with Pennsylvania's custody requirement for bringing a

PCRA petition.[6]  Finally, reaching the merits of claims 2(b) and 5, the Magistrate Judge concluded that Leyva had not demonstrated that the state court decision was contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d).  Leyva, 2005 WL 746042, at *6-7.

Leyva did not object to the Magistrate Judge's report and recommendation, and the District Court adopted it in full.  On November 14, 2005, we granted a certificate of appealability, requesting that Leyva address whether his claims had been procedurally defaulted.

## II.  Jurisdiction and Standard of Review

### A.    Jurisdiction

A federal court has jurisdiction to entertain a habeas petition under 28 U.S.C. § 2254(a) "only if [a petitioner] is in custody in violation of the constitution or federal law."  DeFoy v. McCullough, 393 F.3d 439, 441 (3d Cir. 2005); see also Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003) ("[F]or a federal court to have jurisdiction, a petitioner must be in custody under the conviction he is attacking at the time the habeas petition is filed.").  The term "custody" extends beyond physical confinement, and encompasses other "significant restraints on . . . liberty" that are "not shared by the public generally."  Jones v. Cunningham, 371

---

[6] The Magistrate Judge also found that Leyva's procedural default could not be excused because, "[t]hough petitioner has alleged cause and prejudice for this default, he has not shown that the court's failure to consider this claim would result in a fundamental miscarriage of justice." Leyva v. Williams, No. Civ.A. 04-3697, 2005 WL 746042, at *3 (E.D. Pa. Mar. 30, 2005).  As explained below, however, a petitioner's procedural default may be excused by a showing of "cause and prejudice" or a "fundamental miscarriage of justice."  See, e.g., Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000); McCandless v. Vaughn, 172 F.3d 255, 260, 263 (3d Cir. 1999).  See generally 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure §§ 26.3 & 26.4 (5th ed. 2005).

U.S. 236, 242, 240 (1963). The requirement is satisfied when a petitioner is on probation. Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) ("It is . . . clear that being on probation meets the 'in custody' requirement for purposes of the habeas statute."). "In making a custody determination, [federal courts look] to the date that the habeas petition was filed." Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997); see also Lee, 357 F.3d at 342 ("[W]hat matters for the 'in custody' requirement is whether Lee was in custody *at the time his habeas petition was filed.*").

Although Leyva was in custody when he filed his habeas petition, he no longer is. After a petitioner's release from custody, we consider his habeas case moot unless he "can demonstrate he will suffer some collateral consequences if his conviction is allowed to stand." DeFoy, 393 F.3d at 441-42, 442 n.3. Significantly, though, we may presume "collateral consequences when a litigant challenges a criminal conviction." United States v. Kissinger, 309 F.3d 179, 181 (3d Cir. 2002) (citing Sibron v. New York, 392 U.S. 40 (1968)); see also Spencer v. Kemna, 523 U.S. 1, 8 (1998) ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences . . . .").

In this case, the government does not dispute that Leyva would suffer collateral consequences should his criminal conviction be allowed to stand. Presuming such consequences, we conclude that the District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254, and that we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. See Jacobs v. Horn, 395 F.3d 92, 99 (3d Cir. 2005).

### B. Standard of Review

When a district court rules on a habeas petition without an evidentiary hearing, our review is plenary. Id. The government argues, however, that we should review only for "plain error," because Leyva failed to object to the Magistrate Judge's report and

recommendation.[7]   In <u>Nara v. Frank</u>, we held that "plain error review [rather than *de novo* review] is appropriate where a party fails to timely object to a magistrate judge's [report and recommendation] in habeas corpus cases."  488 F.3d 187, 196 (3d Cir. 2007).  Under plain error review, we reverse an error below only if it was (1) "clear or obvious," (2) "affect[ed] 'substantial rights,'" and (3) "seriously affected the fairness, integrity or public reputation of judicial proceedings."  <u>Id.</u> at 197 (quoting <u>United States v. Olano</u>, 507 U.S. 725, 732, 734 (1993)) (citation omitted).

In <u>Nara</u>, a magistrate judge issued a report recommending the district court grant a petition for habeas corpus.  The recommendation gave the parties ten days in which to file objections to its determinations, warning that a "[f]ailure to file timely objections may constitute a waiver of any appellate rights." <u>Id.</u> at 193.  The government failed to object, and the district court adopted the recommendation.  <u>Id.</u>  Over two weeks later, the government requested that the District Court vacate the order on the grounds that it never received the Magistrate's report and recommendation. <u>Id.</u>  Before the District Court could rule on the request, the government appealed to this Court.

On appeal, we applied plain error review, explaining that this standard of review would "promote[] the effectiveness and efficiency of the lower courts by compelling parties to promptly contest dispositive issues before the magistrate judge and district judge." <u>Id.</u> at 196.  We also observed that the standard "afford[ed] some level of appellate review to all dispositive legal issues raised by a [report and recommendation]," but "g[a]ve substance to the oft-repeated warning that 'failure to timely object may risk the loss of appellate rights.'" <u>Id.</u> at 196-97.

In spite of <u>Nara</u>'s general rule, we decline to apply plain

_____

[7] Under Rule 8(b) of the Rules Governing Section 2254 Cases, "a district court is not required to determine *de novo* whether a magistrate judge erred . . . in his or her report and recommendation if no objection was made by a party on that ground."  <u>Medina v. Diguglielmo</u>, 461 F.3d 417, 426 (3d Cir. 2006).

error review in this case. In <u>Nara</u>, the government was proceeding with counsel and had received a clear warning from the magistrate judge that "[f]ailure to file timely objections may constitute a waiver of any appellate rights." <u>Id.</u> at 193. In contrast, there is no indication that Leyva, a *pro se* litigant, was ever warned that his failure to object to the Magistrate Judge's report would result in the forfeiture of his rights.[8]

Without such a warning, we believe it would be inequitable to deny a *pro se* litigant *de novo* appellate review. <u>Cf.</u> <u>Welch v. Heckler</u>, 808 F.2d 264, 266 (3d Cir. 1986) ("[W]e find that it would be inappropriate to [require an objection in order to preserve a right of appeal], where the language of the magistrate's report did not put [a party] on notice that he would be waiving his appellate rights by not filing objections below."). Indeed, some jurisdictions have allowed an exception to the waiver of appellate rights when such a waiver would defeat "the interests of justice." <u>See</u> <u>Wirsching v. Colorado</u>, 360 F.3d 1191, 1197 (10th Cir. 2004) (recounting approach of several circuits).

In particular, many jurisdictions provide an exception to the waiver of appellate rights when a magistrate judge fails to inform a *pro se* litigant of the consequences of failing to object. <u>See</u> <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991) ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."); <u>see, e.g.</u>, <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) ("[A] *pro se* party's failure to object to a magistrate's report and recommendation . . . does not operate as a waiver of the right to appellate review . . . unless the magistrate's report explicitly states that failure to object . . . will preclude appellate review and specifically cites [certain relevant provisions]."); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986) (requiring

---

[8] In <u>Nara</u>, we distinguished between "failing to timely assert" a right, which results in "forfeiture" (and therefore plain error review), and "waiver" of a right, which "extinguishes any error." <u>Nara v. Frank</u>, 488 F.3d 187, 196 (3d Cir. 2007).

-10-

magistrate judges "to give clear notice to litigants not only of the requirements that objections must be specific and be filed within ten days . . . but that failure to file within the time allowed waives the right to appeal the district court's order"); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985) ("[A] *pro se* litigant must receive fair notification of the consequences of failure to object to a magistrate's report before such a procedural default will result in waiver of the right of appeal."); Wiley v. Wainwright, 709 F.2d 1412, 1412 n.1 (11th Cir. 1983) ("[Party's] failure to object does not limit his right to appeal since he was not informed that objections had to be filed within ten days."). Although these cases address a *waiver* of appellate review, as opposed to a *forfeiture*, see supra note 8, we believe they support an exception to the restriction of our appellate standard of review.

In sum, it would be inequitable to apply plain error review, which is extremely limited, to the claims of a *pro se* litigant who was not warned of the consequences of failing to object. We will therefore review Leyva's claims *de novo*.

## III. Discussion

On appeal, Leyva challenges the Magistrate Judge's determinations that most of his claims were procedurally defaulted, as well as her merits ruling on part of his conflict of interest claim. As set forth further below, we reach the following conclusions. First, Leyva's failure to submit an affidavit to establish that his trial counsel or the complainant's mother were available and willing to testify does not result in procedural default of claim 1, because an affidavit requirement is not an "adequate" state ground. Second, Leyva's failure to comply with Pennsylvania's custody requirement does not bar review of claims 2(a), 3, and 4, because Leyva's noncompliance with this requirement did not result from any failure on his part. Finally, we agree with the government that claim 2(b), concerning trial counsel's prior representation of Wilfredo Lopez, was properly denied by the Magistrate Judge on the merits.[9]

---

[9] Leyva does not address the Magistrate's dismissal of claim 5, and we assume he has conceded that it was properly

After briefly laying out the applicable habeas jurisprudence, we will address each of our three bases for this decision.

## A.    Procedural Default

A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002) (quoting Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" United States v. Bendolph, 409 F.3d 155, 173 (3d Cir. 2005) (quoting Duckworth v. Serrano, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, however, a federal court  may not review it on the merits if a state court's decision rests on a violation of a state procedural rule. Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." Nara, 488 F.3d at 199 (citing Gray v. Netherland, 518 U.S. 152 (1996), and Coleman v. Thompson, 501 U.S. 722 (1991)). The requirements of "independence" and "adequacy" are distinct, see Johnson, 392 F.3d at 557-59, but only the adequacy requirement is at issue here.

A state rule is "adequate" for procedural default purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." Szuchon v. Lehman, 273 F.3d 299, 327 (3d Cir. 2001).[10] These requirements

---

dismissed. See United States v. Voigt, 89 F.3d 1050, 1064 n.4 (3d Cir. 1996).

[10]  In assessing adequacy, we consider whether: "(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the

ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," and that review is foreclosed by "what may honestly be called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant." Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005).

Finally, if a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000). To satisfy the first reason for excuse, the petitioner must show "some objective factor external to the defense [that] impeded . . . efforts to comply with the . . . procedural rule," as well as prejudice. Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). To satisfy the second, the petitioner must typically show "actual innocence." Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002).

## B.      The Affidavit Rule

Leyva alleged that trial counsel was ineffective for failing to present evidence that L.B.'s mother offered to drop the charges against him in exchange for $5,000. According to Leyva, this evidence would have undermined the credibility of the prosecution's chief witness at trial, and his attorney should have withdrawn in order to testify about the illicit offer. The Pennsylvania Superior Court declined to hear this claim on the grounds that Leyva had failed to submit an affidavit stating that trial counsel would have been "available and willing" to testify.[11]

---

merits; and (3) the state courts' refusal in this instance is consistent with other decisions." Jacobs v. Horn, 395 F.3d 92, 117 (3d Cir. 2005) (quoting Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996)).

[11] On this same ground, the Superior Court declined to consider Leyva's ineffectiveness claim for failure to call L.B.'s mother.

-13-

In denying Leyva's claim, the Superior Court relied on Commonwealth v. Khalil, 806 A.2d 415 (Pa. Super. Ct. 2002), in which the defendant claimed trial counsel was ineffective for failing to present exculpatory witnesses. In Khalil, the Superior Court concluded that to pursue such a claim, a defendant is required to provide affidavits from the missing witnesses demonstrating their "availability and willingness to cooperate with the defense." Id. at 422. After determining that unsworn statements provided by the defendant were not affidavits under Pennsylvania law,[12] the Superior Court denied the claim.

The Superior Court's reliance on Khalil in dismissing Leyva's claim does not constitute a basis for procedural default. An affidavit rule was neither firmly established nor regularly applied at the time of Leyva's purported default. As Leyva points out, Khalil was issued on August 2, 2002, approximately seven months after he filed his appellate brief. When Leyva filed his appeal—at which point he would have been required to submit affidavits—Pennsylvania's courts did not require a defendant to submit affidavits. See Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996) ("We must decide whether the rule was firmly established and regularly applied, not . . . when the Superior Court relied on it, but rather as of the date of the waiver that allegedly occurred . . . .").

Our review of precedent at that time reveals no such requirement. For example, Khalil relied on Commonwealth v.

---

[12] According to the court, an affidavit is:

[a] statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer authorized by the laws of this Commonwealth to take acknowledgments of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, and officially certified to in the case of an officer under his seal of office.

Khalil, 806 A.2d at 422 (quoting 1 Pa. Stat. § 1991).

-14-

<u>Davis</u>, 554 A.2d 104 (Pa. Super. Ct. 1989), which set out the following elements of a "missing witness" ineffectiveness claim:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of testimony prejudiced appellant so as to deny him a fair trial.

<u>Id.</u> at 111. The <u>Davis</u> court noted that no affidavits, or other evidence, had been presented in support of the availability of most of the defendant's witnesses. It therefore dismissed the claims relating to those witnesses. As Leyva correctly points out, however, <u>Davis</u> "did not rule that affidavits were the only manner in which the five requirements could be met," Leyva's Br. at 22. In other words, the decision left open the possibility of other forms of proof.

Other Superior Court decisions preceding <u>Khalil</u> suggest that an affidavit was not the only form of proof that could be offered for a missing witness claim. In <u>Commonwealth v. Fink</u>, the court stated that "to establish ineffectiveness for failing to call witnesses, a defendant must *illustrate* that the witnesses were available." 791 A.2d 1235, 1249 (Pa. Super. Ct. 2002) (emphasis added). In <u>Commonwealth v. Lowery</u>, the Superior Court stated that a defendant needed to "demonstrate" the five factors of a missing witness claim. 784 A.2d 795, 800 (Pa. Super. Ct. 2001). And in <u>Commonwealth v. Petras</u>, the court required a defendant to "offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can" find ineffectiveness. 534 A.2d 483, 485 (Pa. Super. Ct. 1987) (internal quotation marks and citation omitted). None of these cases—which required an "illustration," a "demonstration," or an "offer of proof"—ruled that an affidavit was the only manner of satisfying a defendant's burden.[13]

---

[13] Even the government concedes that an affidavit is not required and that "the actual rule is not so rigid or inflexible." Gvt. Br. at 27.

Furthermore, a few years before Leyva's appeal, the Supreme Court of Pennsylvania rejected a missing witness claim when the defendant failed to "set forth the name of a single person who was willing to testify" either "by affidavit *or otherwise*." Commonwealth v. Copenhefer, 719 A.2d 242, 254 (Pa. 1998) (emphasis added). In setting forth the requirements of such a claim, the Supreme Court relied on Commonwealth v. Stanley, 632 A.2d 871, 872 (Pa. 1993), which stated that "[t]he existence and availability of the witness must be shown," without specifying any required method for doing so. These Supreme Court cases do not support the application of an affidavit requirement at the time of Leyva's default.[14]

In sum, the Superior Court denied review of Leyva's claims because he failed to submit an affidavit from trial counsel. Based on the foregoing, Leyva did not have "fair notice of the need" to do so in presenting his appeal. Bronshtein, 404 F.3d at 707. Accordingly, we conclude that an affidavit requirement was not firmly established or regularly applied at the time of the purported default.[15] Leyva is therefore not barred from pursuing federal

---

[14] Leyva contends that he sufficiently demonstrated that trial counsel was available to testify under Pennsylvania law. We do not consider whether his proffer was sufficient to meet Pennsylvania's procedural requirement for bringing his claim, however, but limit our review to the state court's basis for dismissal, which was the affidavit requirement.

[15] Cf. Albrecht v. Horn, 485 F.3d 103, 116 (3d Cir. 2007) ("The 'unforgiving' waiver rule was not 'consistently and regularly applied' at the time of Albrecht's default."); Nara, 488 F.3d at 200 ("Nara's incompetency claim was not procedurally defaulted, because Pennsylvania courts have frequently applied exceptions to [the procedural rule]."); Bronshtein v. Horn, 404 F.3d 700, 709 (3d Cir. 2005) ("[T]the state procedural rule at issue in this case . . . was not firmly established and regularly followed at the time in question."); Jacobs, 395 F.3d at 117 ("The Pennsylvania Supreme Court did not firmly establish its strict enforcement of the waiver rule [until] more than a year after Jacobs' PCRA petition was denied."); Doctor, 96 F.3d at 685-86 ("[I]t was not 'firmly

review of his first claim on the merits.

## C.    The Custody Requirement

The Magistrate Judge declined to reach the merits of claims 2(a), 3, and 4, because of procedural default. As the Magistrate Judge explained, these claims were not raised on direct appeal in the state courts, but were raised in Leyva's PCRA petition. The PCRA court dismissed this petition without a review on the merits when Leyva's term of probation ended because he had failed to comply with the state law requirement that he be "currently serving a sentence." See 42 Pa. Stat. § 9543(a)(1)(i) ("To be eligible for relief . . . the petitioner must plead and prove . . . that the petitioner . . . is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime."); Commonwealth v. Ahlborn, 699 A.2d 718, 720 (Pa. 1997).[16]

Leyva argues that his noncompliance with Pennsylvania's custody requirement should not bar federal review of his claims. Specifically, he argues that the requirement does not create a procedural bar, but simply deprives him of "available State corrective process" under § 2254(b). We have explained, however, that the absence of state corrective process is generally an excuse to the *exhaustion* requirement, see, e.g., Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005), not to the application of *procedural default*. We have therefore applied procedural default when the reason for the absence of state process is a petitioner's failure to

---

established' that Pennsylvania courts lacked the discretion to hear an appeal first filed after custody had been restored.").

[16] Pennsylvania's custody requirement for hearing PCRA claims is more stringent than the federal jurisdictional requirement for habeas corpus. In determining whether a petitioner is "in custody," federal law looks to the date the petition is filed, Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997), whereas Pennsylvania law looks to the date the relief is granted, Ahlborn, 699 A.2d at 720. In this case, both petitions were filed while Leyva was in custody, but neither was addressed prior to his release.

comply with state procedural rules. See, e.g., McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) ("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' In such cases, however, applicants are considered to have procedurally defaulted their claims . . . .") (quoting 28 U.S.C. § 2254(b)(1)(A)).

This is not required here. Noncompliance with Pennsylvania's custody requirement did not result from any *failure* on the part Leyva, but simply from the expiration of his sentence. This factor was outside Leyva's control and need not form the basis for a default. See Williams v. Taylor, 529 U.S. 420, 432 (2000) ("To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is, as a consequence, at fault and bears responsibility for the failure."). Indeed, we have previously declined to treat a petitioner's failure to comply with Pennsylvania's custody requirement as a basis for procedural default. Coss v. Lackawanna County District Attorney, 204 F.3d 453, 460 n.8 (3d Cir. 2000), rev'd on other grounds 532 U.S. 394 (2001) ("We view [the custody rule stated in] Commonwealth v. Ahlborn not as erecting a 'procedural bar,' but as a statement that there is no available state remedy. . . .").

Even if there had been a default, however, we would excuse noncompliance with the custody requirement because Leyva has shown "cause and prejudice." As we have explained, there is "cause" for noncompliance with a state rule, when "some objective factor external to the defense impeded . . . efforts to comply with the . . . rule." Slutzker, 393 F.3d at 381 (quoting Murray, 477 U.S. at 488). Here, Leyva's failure to be in custody through the duration of his PCRA petition resulted from factors beyond his control, and cannot "fairly be attributed to him." Lines, 208 F.3d at 166 (quoting Coleman, 501 U.S. at 753). Accordingly, Leyva has cause for noncompliance.

Moreover, Leyva can sufficiently show the prejudice needed to excuse a procedural default. Slutzker, 393 F.3d at 380-81. The very same judge who found Leyva guilty of statutory sexual assault

and corruption of a minor later concluded that his ineffective assistance claims warranted a new trial. Thus, if Leyva can establish that his trial counsel was ineffective, that conclusion would be enough to warrant a new trial. In this situation, it would be prejudicial to deny Leyva consideration of his ineffective assistance claims on the merits. Cf. Werts v. Vaughan, 228 F.3d 178, 193 (3d Cir. 2000) ("In the context of an ineffective assistance claim, we have stated that prejudice occurs where 'there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.'") (quoting Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)).

We thus conclude that Leyva's claims are not defaulted on account of his failure to be in custody.

## D. Conflict of Interest

Within his second habeas claim, Leyva alleged that trial counsel represented him in spite of a conflict of interest created by his former representation of L.B.'s mother's boyfriend, Wilfredo Lopez. The Pennsylvania Superior Court rejected this claim, explaining that trial counsel's "representation of Lopez, in an unrelated matter, concluded three years before [Leyva's] trial" and only provided him additional information about L.B.; it thereby did not constitute a conflict that was prejudicial to Leyva. App. 364. The Magistrate Judge determined that this ruling was not "contrary to or an unreasonable application of clearly established federal law." Leyva, 2005 WL 746042, at *6-7. See 28 U.S.C. § 2254(d).

Leyva does not attempt to rebut this determination, and nowhere points out how trial counsel "actively represented conflicting interests" in a way that "adversely affected [his] performance." Hess v. Mazurkiewicz, 135 F.3d 905, 910 (3d Cir. 1998) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). We do not believe it was "contrary to or an unreasonable application of clearly established federal law" for the Superior Court to find no constitutionally significant conflict of interest when trial counsel represented Lopez prior to representing Leyva. Accordingly, we will affirm this portion of the District Court's dismissal.

## IV. Conclusion

We conclude that neither the affidavit rule nor the custody requirement bar consideration of Leyva's claims on the merits. Accordingly, we vacate the dismissal of claims 1, 2(a), 3, and 4. Because the merits of these claims have not been briefed or argued before us, we will remand to the District Court for further proceedings.

———