

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# Anthony Boggs v. DA Chester Cty

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1857

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Anthony Boggs v. DA Chester Cty" (2008). *2008 Decisions.* Paper 1623.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1623

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1857

ANTHONY K. BOGGS,
                                        Appellant

v.

DAVID DIGUGLIELMO;
THE DISTRICT ATTORNEY OF THE COUNTY OF CHESTER;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-05882
(Honorable Anita B. Brody)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 17, 2008
Before:  SCIRICA, *Chief Judge*, BARRY and ROTH, *Circuit Judges*.

(Filed: February 12, 2008)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

        In a jury trial in the Chester County, Pennsylvania Court of Common Pleas,

Anthony K. Boggs was convicted of murder in the first degree and received a sentence of

life imprisonment.[1]  Boggs appeals an order denying his petition for writ of habeas

corpus, 28 U.S.C. § 2254.[2]  We issued a certificate of appealability on a single issue:

whether Boggs' counsel was ineffective for failing to appeal a properly preserved claim

under *Batson v. Kentucky*, 476 U.S. 79 (1986).[3]  We will affirm.

I.

At the close of jury selection, Boggs raised a *Batson* objection based on the

peremptory strikes of three African-American venirepersons.  The trial court addressed

each objection and concluded the Commonwealth did not violate *Batson*.  On direct

---

[1]Boggs appealed the judgment of sentence to the Superior Court of Pennsylvania, which affirmed.  *See Commonwealth v. Boggs*, No. 1390 Philadelphia 1998 (Pa. Super. Ct. Jan. 14, 1999).  The Pennsylvania Supreme Court denied *allocatur*.  *See Commonwealth v. Boggs*, 740 A.2d 1143 (Pa. 1999).  Boggs sought relief under the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541-9546.  The Court of Common Pleas dismissed his petition.  *See Commonwealth v. Boggs*, No. 505-97 (Pa. Commw. Ct. June 13, 2003).  The Superior Court affirmed, *see Commonwealth v. Boggs*, No. 2170 EDA 2003 (Pa. Super. Ct. July 13, 2004), and the Pennsylvania Supreme Court denied Boggs' *nun pro tunc* allowance for appeal.  *See Commonwealth v. Boggs*, 190 MM 2004 (Pa. 2004).

[2]Boggs filed a *pro se* petition which was referred to a Magistrate Judge.  Judge Wells recommended that each of Boggs' habeas claims be dismissed or denied without a hearing.  *See Boggs v. Diguglielmo*, No. 04-5882 (E.D. Pa. Aug. 25, 2005) (Report and Recommendation).  The District Court approved and adopted the Report and Recommendation and denied the habeas petition.  *See Boggs v. Diguglielmo*, No. 04-5882 (E.D. Pa. Mar. 6, 2006).

[3]"[T]he Equal Protection Clause [of the Fourteenth Amendment] forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  *Batson*, 476 U.S. at 89.

2

appeal in state court, Boggs' counsel did not raise the *Batson* claim.[4]  In his PCRA

petition, Boggs sought relief for ineffective assistance based on a failure to appeal the

*Batson* issue.  The PCRA court rejected Boggs' claim, concluding: "[t]he Commonwealth

set forth neutral based explanations which were supported by the *voir dire* of [the

jurors]."  *Commonwealth v. Boggs*, No. 505-97 (Pa. Commw. Ct. June 13, 2003).  The

Superior Court summarily affirmed.  *Commonwealth v. Boggs*, No. 2170 EDA 2003 (Pa.

Super. Ct. July 13, 2004).

Boggs seeks federal habeas relief, asserting his counsel's failure to appeal the

*Batson* claim denied his Sixth Amendment right to effective assistance of counsel.

Boggs' petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 28 U.S.C. § 2254.  Relief will only be granted if the state court decision

challenged "was contrary to, or involved an unreasonable application of, clearly

---

[4]On direct appeal, counsel raised two issues: (1) that a Commonwealth witness
improperly commented on the credibility of two defense witnesses, and (2) that the trial
court erred in failing to grant Boggs' motion to suppress his statements made at the police
station.  Neither claim prevailed.  *Commonwealth v. Boggs*, No. 1390 Philadelphia 1998
(Pa. Super. Ct. Jan. 14, 1999).
    During the PCRA hearing, counsel explained the reason why he did not also raise
the *Batson* claim on direct appeal:

> I did not believe that I had a valid *Batson* claim that I could raise on appeal
> in the appellate courts that would be successful . . . .  So although I made
> that objection at trial, and many times I will make objections at trial to
> protect the record, when I review the record for appellate purposes or to
> brief something, there are many times I may not present an issue to the
> appellate court even though it's raised at trial, and I didn't believe I had a
> strong *Batson* issue at all.

Transcript of January 2, 2003 PCRA Hearing.

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405-407 (2000).

We evaluate Boggs' claim under the ineffectiveness standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under *Strickland*, a defendant must establish that counsel's performance was deficient and that it prejudiced the defense. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient when the "representation fell below an objective standard of reasonableness." *Id.* at 688. Accordingly, Boggs must show that his counsel "unreasonably failed to . . . file a merits brief raising [a nonfrivolous *Batson* claim]." *Smith*, 528 U.S. at 285. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Boggs must show "a reasonable probability that, but for his counsel's failure . . . , he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

## A.

In her Report and Recommendation, the Magistrate Judge concluded that because the underlying *Batson* claim lacked merit, counsel was not ineffective for failing to raise it on appeal. *Boggs v. Diguglielmo*, No. 04-5882 (E.D. Pa. Aug. 25, 2005) (Report and Recommendation). Although Boggs objected to the Magistrate Judge's findings on other

4

matters, he did not object to the conclusion that his underlying *Batson* claim lacked merit.

In *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007), we articulated the general rule: "[p]lain error review is appropriate where a party fails to timely object to a magistrate judge's [Report and Recommendation] in habeas corpus cases."[5] *Id.* at 196. But in *Leyva v. Williams*, 504 F.3d 357 (3d Cir. 2007), we conducted a plenary review despite a *pro se* litigant's failure to object to a magistrate's report and recommendation. We noted that there was no indication that the *pro se* litigant "was ever warned that his failure to object to the Magistrate Judge's report would result in the forfeiture of his rights." *Id.* at 364. We concluded that "[w]ithout such a warning . . . it would be inequitable to deny a *pro se* litigant *de novo* appellate review." *Id.*

As noted, Boggs filed his habeas petition *pro se*. Furthermore, the Report and Recommendation did not include language warning of the consequences for failing to object. But unlike the petitioner in *Leyva*, Boggs filed an eight-page objection to the Magistrate Judge's Report and Recommendation. Boggs challenged the Magistrate Judge's holdings on three of his ineffective assistance claims – failure to investigate, interview and call key witnesses to testify at trial, prejudicing the jury during voir dire,

---

[5]"Under the plain error standard, we should only reverse the District Court's decision if it made a plain error which affects 'substantial rights.'" *Nara*, 488 F.3d at 197 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If we discern an error, we will only correct it if the appellant also demonstrates the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Nara*, 488 F.3d at 197 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

5

and failure to object when the prosecutor presented a mistaken fact to the jury. But he did not object to the finding that his underlying *Batson* claim lacked merit. Based upon Boggs' actions, we find *Levya* distinguishable and should apply the general plain error rule articulated in *Nara*. Boggs cannot establish plain error. Nevertheless, we would affirm even under a *de novo* standard of review.

B.

As noted, in order to prevail, Boggs must establish that the state court's determination was contrary to, or an unreasonable application of, *Strickland*'s performance and prejudice prongs. Because we conclude that Boggs' underlying *Batson* claim lacks merit, we need not address *Strickland*'s performance prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

In *Batson*, the Supreme Court articulated a three-step burden shifting process by which a trial court should evaluate an objection to race-based juror exclusion:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (citing *Batson*, 476 U.S. at 96-98).

Responding to Boggs' *Batson* objection, the trial court proceeded directly to *Batson*'s second step and asked the prosecutor to answer the objection. The prosecutor

6

then provided race-neutral reasons for the peremptory strikes of the three African-American venirepersons.[6] *See Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion)). Accordingly, the prosecutor satisfied *Batson*'s second prong.

Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, "the persuasiveness of the justification becomes relevant." *Purkett*, 514 U.S. at 768. At the third step, "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.*; *see also Hardcastle v. Horn*, 368 F.3d 246, 259 (3d Cir. 2004) (explaining that a court conducting a *Batson* inquiry must "address and evaluate all evidence introduced by each side . . . that tends to show that race was or was not the real reason and determine whether the defendant has met his burden of persuasion") (quoting *Riley v. Taylor*, 277 F.3d 261, 286 (3d Cir. 2001) (en banc)). Based on the prosecutor's explanations, oral argument by counsel,

---

[6]In response to the *Batson* objection, the prosecutor stated that (1) the first juror was struck because he was reluctant to apply the death penalty, he had a brother who was a juvenile advocate, he had a financial hardship, and he was concerned about police bias in the treatment of African-Americans; (2) the second juror was struck because her son was in prison for a similar incident and because she stated that she would not impose the death penalty in a case where drugs were involved; (3) the third juror was struck because of her demeanor, personality, and perceived hostility toward the prosecutor, as well as her assistance to drug users through her church.

observations of the *voir dire* and review of the record, the trial court concluded that the Commonwealth did not violate *Batson*.[7] As noted, the PCRA court concluded Boggs failed to meet his burden of proving purposeful discrimination because the prosecutor's race-neutral explanations were supported by the record.[8] We agree. Accordingly, because Boggs is unable to satisfy the prejudice prong of *Strickland*, his ineffective assistance of counsel claim is without merit.

II.

We will affirm the denial of the petition for writ of habeas corpus.

---

[7]The trial court concluded the Commonwealth properly struck the first juror because he had a philosophical "problem" with capital punishment. Next, it found the Commonwealth had valid reasons for striking the second juror because she would not impose a death penalty in a case where drugs were involved and because she had a son in a similar position as the defendant. Finally, after noting the third juror's demeanor during *voir dire*, the trial court expressed concern over her ability to follow jury instructions and found the Commonwealth's assertion to be a "legitimate concern."

[8]Boggs also contends that the third step in a *Batson* analysis requires the trial court to conduct a comparison analysis between seated jurors and those struck. As an appellate court, we have used a comparative analysis at *Batson*'s third step. *See e.g.*, *Holloway v. Horn*, 355 F.3d 707, 724 (3d Cir. 2004); *Riley v. Taylor*, 277 F.3d 261, 282 (3d Cir. 2001) (en banc). But a comparative analysis "is one of many tools that a court may employ to determine whether the government exercised its peremptory challenges for a discriminatory purpose." *United States v. You*, 382 F.3d 958, 969 (9th Cir. 2004). "Trial courts, however, are not required to conduct such an analysis." *Id.*